Filed 12/12/13  P. v. Nunez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>FRANCISCO ARTURO NUNEZ,<br><br>　　　Defendant and Appellant. | B241377<br><br>(Los Angeles County<br>Super. Ct. No. VA118284) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Dewey Falcone, Judge.  Affirmed as modified.

　　　　Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Francisco Arturo Nunez, appeals his conviction for attempted murder, aggravated mayhem, torture and corporal injury to a child's parent, with a great bodily injury enhancement. (Pen. Code, §§ 664, 187, 205, 206, 273.5, 12022.7).[1] He was sentenced to state prison for a term of life.

The judgment is affirmed as modified.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

On the afternoon of January 1, 2011, Maribel Rebolledo, who has a child with defendant Nunez, visited him at his residence in Hawaiian Gardens. Nunez lived in a detached garage next to a house. Rebolledo testified that when she arrived, Nunez and two friends were celebrating New Year's Day. Rebolledo had not seen Nunez for a while, but that day they were getting along: "I remember everything was right the whole way, like we weren't arguing or anything. It was a nice conversation." Rebolledo testified she was not depressed or suicidal that day. After Nunez's two friends left, he and Rebolledo remained in the backyard by themselves.

Sometime that evening, while she was still visiting Nunez, Rebolledo was severely burned after having been doused with gasoline. Rebolledo testified she had no memory of how this happened. She only remembered the ambulance taking her to the hospital, where she remained in intensive care for more than six months. She had sustained third degree burns from the top of her head to her waist; there were burns on her chest, stomach, neck, ears, arms and legs. All her fingers had to be amputated. By the time of trial, she had undergone several surgeries and was scheduled for more.

Los Angeles County Sheriff's Detective Dana Duncan, an arson investigator, responded to the hospital within 30 or 40 minutes of the first 911 call. When Duncan entered the emergency room, there was a very strong smell of gasoline and burnt flesh:

---

[1]     All further references are to the Penal Code unless otherwise specified.

2

"The burned flesh, burned hair, and gasoline are just permeating the entire emergency room." "And I pretty much followed my nose right up to her hair, and . . . I noticed that her hair was still wet with gasoline, and it was very, very strong right on the top of her head and . . . the gasoline was actually [dripping onto] the sheet that she was laying on." Duncan testified Rebolledo had been "terribly burned, from the top of her head to about her belt line." The inside of her nostrils had been burned black, indicating she had "breathed in flame." The tops of her ears were gone, as were her eyebrows and eyelashes. Her eyelids, nose and lips were extremely red. Her skin was black and "falling off onto the gurney. It was sloughing off." Her palms were extremely swollen and horribly burnt, which Duncan testified was consistent with Rebolledo having tried to put out the fire with her hands. The skin on both hands had "degloved," which means "[t]he upper layer of the skin . . . inverts and pulls off the hand itself, and it looks like a glove."

Duncan went from the hospital to Nunez's residence. Nunez was gone. On the driveway leading to the backyard there was a synthetic welcome mat or rug which had been "melted almost into a ball." There was human hair, a melted cigarette pack and a cigarette attached to the rug and, next to it, there "appeared to be . . . the skin of a breast sloughed off onto the driveway." Lying on the grass, three or four feet away, was a cigarette lighter. The skin of a hand that had degloved was on the ground. The entire area smelled of gasoline, but Duncan could not find any gasoline container. There were numerous beer and liquor bottles strewn throughout the backyard. At the entrance to Nunez's garage Duncan found a gold plastic headband and a purple shirt. There was burnt skin on the floor near the bed and a purple bra on the couch.

Duncan explained that a lit cigarette thrown into a pool of gasoline will not ignite the gasoline because the cigarette is not hot enough. An open flame has to reach approximately 500 degrees in order to ignite gasoline vapors and start a fire.

3

The police found Nunez about two months later at the Mexican border. When he was apprehended, his left arm, from the wrist to the shoulder, had "severe deep tissue burns." Duncan opined Nunez's injury had been caused by "a combination of flashback and a flammable substance [like gasoline] on the skin." Flashback occurs when an open flame is applied to a flammable substance and "it suddenly ignites and . . . people lose hair and . . . singe eyebrows, things like that." There were no burns on Nunez's palms, which showed "he never attempted to put this fire out with his hands." There were "protective patterns on [Nunez's] palms" that were consistent with having his hands closed around something. In contrast, Rebolledo's hands were "very swollen red and moist" and her palms were "horribly burnt," indicating she had tried to put out the flames with her hands.

Los Angeles County Sheriff's Detective Derek Yoshino, Duncan's supervisor, testified he also smelled the strong, unique odor of gasoline coming from Rebolledo in the emergency room. Yoshino opined the injuries to Nunez's arm and hand were the result of being burned by a flame or a fire. The fact there was no fire damage to the palms of Nunez's hands meant "the skin [of his palms] was not at any point directly impinged against flame." "There's only two ways that a person is not going to sustain a burn. We call them protective patterns. Protective patterns means either there's something shielding it, directly protecting it from the flame itself. So that could either be clothing or that could be a hard object or something that is not highly combustible, or it could be that it's completely protected in the sense that the flames can't get into the inside of the palms because the fingers are protecting it." He opined the burns on Nunez's arm were "very consistent with flash burns from a gasoline type fire."

It was stipulated that clothing found at the scene had gasoline on it but had not been burned. It was also stipulated that Nunez had been convicted of a domestic violence offense (§ 273.5) arising out of an incident in 2002.

Nunez did not testify or present any evidence.

4

**CONTENTIONS**

1. There was insufficient evidence to convict Nunez of any crime.

2. The trial court erred by refusing to instruct the jury on voluntary intoxication.

3. The trial court erred by not instructing the jury, sua sponte, on accident as a defense.

4. Nunez's conviction must be reversed for cumulative error.

5. Nunez is entitled to additional presentence custody credits.

**DISCUSSION**

1. *There was sufficient evidence to sustain Nunez's convictions.*

Nunez contends there was insufficient evidence to sustain any of his convictions because there was no direct evidence he set Rebolledo on fire, and the circumstantial evidence did not support a reasonable inference he had done so. This claim is meritless.

      a. *Legal principles.*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing

5

court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

The reviewing court is to presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Ochoa, supra,* 6 Cal.4th at p. 1206.) "[E]ven though the appellate court may itself believe that the circumstantial evidence might be reasonably reconciled with the defendant's innocence, this alone does not warrant interference with the determination of the trier of fact." (*People v. Towler* (1982) 31 Cal.3d 105, 118.) It does not matter that contrary inferences could have been reasonably derived from the evidence. As our Supreme Court said in *People v. Rodriguez, supra,* 20 Cal.4th 1, while reversing an insufficient evidence finding because the reviewing court had rejected contrary, but equally logical, inferences the jury might have drawn: "The [Court of Appeal] majority's reasoning . . . amounted to nothing more than a different weighing of the evidence, one the jury might well have considered and rejected. The Attorney General's inferences from the evidence were *no more inherently speculative* than the majority's; consequently, the majority erred in substituting its own assessment of the evidence for that of the jury." (*Id*. at p. 12, italics added.)

b. *Discussion*.

Nunez argues: "There was no evidence presented that appellant was the cause of [Rebolledo being doused with gasoline]. The prosecution's interpretation is that appellant doused her with gasoline and lit the flame that caused the fire. But, at trial, there was no evidence presented that appellant was the cause of the flame that ignited the vapors. The only evidence presented was the testimony from the deputies that appellant had to have been close to the gasoline vapors that ignited because of the injuries he sustained to his arms and his forearms. That appellant sustained these injuries did not only support the prosecution's theory that appellant ignited the vapors . . . . Another entirely reasonable inference is that he was standing nearby when the vapors ignited. [¶] It is a reasonable interpretation that appellant could have doused Rebolledo with gasoline. Just as reasonable an interpretation is that it was Rebolledo alone who doused herself

6

with gasoline. . . .   The evidence presented did not show that Rebolledo was set on fire but that she caught fire – and there was no evidence to establish who did it or how it happened."  "A reasonable interpretation of the evidence is that someone lit a cigarette with a lighter which caused the fire.  But, again, the real question is who?"

Nunez's argument is unpersuasive.  Even if there are two equally reasonable interpretations of what happened in a particular case, that would be a question for the jury, not this court.  " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez, supra,* 20 Cal.4th at p. 11.)  In this case, however, there is little doubt the jury's interpretation of the evidence was by far the more reasonable.

Nunez's recounting of the evidence is deficient in several respects.  There was in fact evidence showing he was the one who lit the gasoline on fire; it is just that this evidence was circumstantial rather than direct.  In addition, Nunez is ignoring both the consciousness of guilt evidence of his flight from the scene, and the Evidence Code section 1109 propensity evidence that he had previously been guilty of domestic violence.  Nunez's argument at trial in support of his motion to dismiss for insufficient evidence (§ 1118.1) was that Rebolledo accidentally spilled the gasoline on herself and then accidentally set herself on fire while trying to light a cigarette.  But, as the Attorney General points out, the evidence showed "Rebolledo was not simply splashed with gasoline; she was doused with so much . . . it saturated her hair and remained dripping off her body when she was brought into the emergency room."  This evidence tended to show there had been no accident.

Moreover, although Rebolledo had been drenched with gasoline, no gasoline container was found at the crime scene, indicating someone removed it.  As Rebolledo and Nunez were apparently the only people present when the fire occurred, and since Rebolledo could not have removed the gasoline container, Nunez must have taken it when he fled.

7

There was clearly sufficient evidence to sustain Nunez's convictions.

2. *Trial court properly refused to instruct on voluntary intoxication.*

Nunez contends the trial court erred by denying his request to have the jury instructed on voluntary intoxication in an attempt to negate the specific intent elements of attempted murder, aggravated mayhem and torture. This claim is meritless.

a. *Background.*

Rebolledo testified she and Nunez had been drinking before the fire occurred, and Detective Duncan found numerous beer and liquor bottles strewn around the backyard. Defense counsel asked the trial court to instruct the jury on voluntary intoxication, but the court refused because there was insufficient evidence Nunez had been intoxicated: "The victim did testify that the defendant had been drinking a lot, and there was evidence about bottles of beer and/or liquor bottles being in the yard, but there was no evidence of any amount of liquor consumed other than drinking a lot[,] or how it may have affected Mr. Nunez. So the court cannot say that the victim's statement that the defendant had been drinking a lot would warrant an instruction on intoxication because there's nothing that indicates to the court that drinking a lot in any way affected the sobriety of Mr. Nunez."

b. *Legal principles.*

Section 29.4, subdivision (b), provides: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." However, "[a] defendant is entitled to [a voluntary intoxication] instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.' " (*People v. Williams* (1997) 16 Cal.4th 635, 677; see *People v. Seaton* (2001) 26 Cal.4th 598, 666 [defense counsel's failure to request intoxication instruction could not have been prejudicial because, although defendant smoked cocaine and drank gin, beer and wine before committing the offense, the evidence "did not strongly suggest [these intoxicating substances] prevented him from

8

forming the intent to commit these crimes"]; *People v. Williams, supra*, 16 Cal.4th at p. 678 [intoxication instruction unwarranted because "no evidence at all that voluntary intoxication had any effect on defendant's ability to formulate intent"]; *People v. Ramirez* (1990) 50 Cal.3d 1158, 1181 [intoxication instruction unwarranted where no evidence defendant's beer drinking "had any noticeable effect on his mental state or actions"].)

The evidence here showed only that Nunez had consumed some unknown quantity of alcohol; he does not cite any evidence showing he was intoxicated or that his thought processes had been distorted.

The trial court did not err by refusing to instruct the jury on voluntary intoxication.

3. *Trial court did not err by failing to instruct on the defense of accident.*

Nunez contends the trial court erred by not instructing the jury, sua sponte, on an accident defense. Alternatively, he claims defense counsel was ineffective for not requesting the instruction. These claims are meritless.

Section 26 provides: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five – Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." However, "[a] claim of accident . . . is not an affirmative defense that can trigger a duty to instruct on the court's own motion." (*People v. Jennings* (2010) 50 Cal.4th 616, 674-675) "In *People v. Anderson* (2011) 51 Cal.4th 989 . . . , the Supreme Court affirmed a felony murder conviction with a true finding the killing occurred during the course of a robbery, rejecting a claim the trial court erred by failing to instruct on accident as a defense where, in the process of stealing the victim's car, the defendant ran over her. 'That the law recognizes a defense of accident does not, however, establish that trial courts have a duty to instruct on accident sua sponte.' " (*People v. Petronella* (2013) 218 Cal.App.4th 945, 962.)

In any event, without Nunez's testimony there was no substantial evidence to support an accident defense. Indeed, the Attorney General convincingly argues that even had Nunez testified to a "two accident" scenario, it would not have been believed:

9

"Under an accident theory, appellant would have had to light a cigarette lighter right next to Rebolledo, who had without his knowledge somehow been doused with gasoline all over her body, thereby causing her to ignite. . . . [N]o reasonable juror could believe that Rebolledo's body was accidentally doused with gasoline, such that her hair was saturated, and that then appellant, unaware that Rebolledo was covered in flammable liquid, accidentally lit an open flame directly next to her."

Finally, any error would have been harmless because, in connection with finding Nunez guilty of attempted murder, aggravated mayhem and torture, the jury had to find he acted with a specific intent to injure Rebolledo, a conclusion entirely at odds with an accident defense. (See *People v. Jones* (1991) 234 Cal.App.3d 1303, 1314-1316, disapproved on other grounds in *People v. Anderson, supra,* 51 Cal.4th at p. 998, fn. 3 [any error in failing to instruct on accident defense was harmless because jury found defendant guilty of attempted murder].)

4. *Cumulative error.*

Nunez contends that, even if harmless individually, the cumulative effect of these claimed trial errors mandates reversal of his convictions. Because we have found no errors, his claim of cumulative error fails. (See *People v. Seaton, supra,* 26 Cal.4th at p. 639; *People v. Bolin* (1998) 18 Cal.4th 297, 335.)

5. *Presentence custody credits.*

Nunez contends, and the Attorney General agrees, he was improperly denied any presentence custody credits because the trial court apparently believed none could be earned by a defendant sentenced to an indeterminate life term. (See *People v. Duff* (2010) 50 Cal.4th 787, 793 ["The circumstance that a defendant is sentenced to an indeterminate sentence does not preclude the earning of presentence conduct credit."].)

An incorrect calculation of custody credits results in an unauthorized sentence, which may be corrected at any time. (*People v. Duran* (1998) 67 Cal.App.4th 267, 270.) Because Nunez was convicted of violent felonies, his presentence custody credits are limited to 15 percent of the presentence custody credits he would otherwise have earned. (§ 2933.1, subd. (a).) Nunez was entitled to 455 days of actual credit plus 68 days of conduct credit, for a total of 523 days of presentence custody credit.

## DISPOSITION

Affirmed as modified. The judgment is modified to reflect an award of 523 days of precommitment conduct credit and, as modified, the judgment is affirmed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

ALDRICH, J.

11