Opinion
WERDEGAR, J.
We hold here that the intent element of robbery does not include an intent to apply force against the victim or to cause the victim to feel fear. It is robbery if the defendant committed a forcible act against the *992 victim motivated by the intent to steal, even if the defendant did not also intend for the victim to experience force or fear. We also hold a trial court has no obligation to provide a sua sponte instruction on accident where, as here, the defendant’s theory of accident is an attempt to negate the intent element of the charged crime.
BACKGROUND
Defendant Paul D. Anderson is a longtime methamphetamine addict. As of the time of the crimes at issue here, he had been out of work for a year, was separated from his wife, had neither a job nor a car, and was living on the streets or spending nights in the homes of other methamphetamine users. He obtained money by breaking into cars, sometimes by means of a shaved key, and stealing things. He used stolen credit cards and sometimes tried to pass forged checks. He had once stolen a car. Defendant’s criminal history does not appear to have involved any act of force or violence directed against his victims.
Defendant spent the morning and afternoon of November 7, 2003, at the home of Ginger Lyle, a drug dealer, where he smoked methamphetamine and socialized with Lyle and several other users. After leaving Lyle’s home, he went to an apartment complex a few blocks away, later stating he went with the intention of finding a car to steal so he could visit his wife and children.
On November 7, 19-year-old Pamela Thompson came home from work around 9:00 p.m. She parked her car in the apartment complex’s carport and went to her apartment to change her clothing before going out, leaving her purse in the car. In the meantime, defendant entered the complex looking for a car he could enter with his key. After failing to break into several cars, defendant successfully opened the door to Pamela’s car, started it, and attempted to drive out of the complex. After discovering the gate to the complex did not open automatically, defendant backed the car into a parting space to wait for someone else to open the gate. By this time, Pamela had discovered her car was gone. She telephoned her stepfather, Joe Deitz, asking if he had taken it. When he said he had not, she told him the car had been stolen. Pamela also called her mother, Barbara Thompson, telling her the car had been stolen and she was looting for it. After they spoke for a few minutes, Barbara heard Pamela say, loudly, “Oh, my God. Here comes my car real fast.” The phone went silent. A moment later Barbara’s telephone indicated someone was on another line. It was Joe, calling for information about the car. Barbara told him something had happened to Pamela out at the gate. Joe ran to the gate where he found Pamela lying in a puddle of blood on the street near the drive that led into the apartment complex. Pamela was still conscious, but was struggling for breath and stopped breathing shortly after *993 Joe found her. Joe performed CPR (cardiopulmonary resuscitation) until paramedics arrived. Pamela never regained consciousness and died a few days later. She had suffered multiple blunt-force traumas resulting in multiple skull and rib fractures, injuries consistent with having been crushed by a car traveling the length of her body.
Witnesses reported hearing the sound of a car and a female voice in what seemed to be an argument that went on for perhaps 20 to 30 seconds. The voice shouted “Stop!” three times, after which there was a very loud thump and the shouting stopped. The witnesses heard the car accelerate, but were not certain whether the acceleration occurred before or after the thump. They heard the car’s tires screech as it left the complex.
Defendant had run over Pamela. He did not deny hitting her, but claimed it was an accident. He stated he saw the gate to the complex open to admit a car. After the car passed, he drove toward the gate, which began to close. He drove quickly around the gate, estimating his speed at 25 to 30 miles per hour. He claimed he had not heard anyone shout, explaining the car’s windows were closed. He stated he had kept his head down as he was driving, theorizing that for that reason, and because it was night and the gate obscured his vision, he had not seen anything until he looked up and saw Pamela standing just outside the gate, approximately 10 to 12 feet from him, with her hand up. He swerved, explaining he did not think he could stop in time. Defendant admitted feeling an impact, stating he thought he might have struck the girl, but he also thought it was possible she had hit the side of the car or he had gone up over the curb. He was frightened, did not stop to see if he had injured anyone, and drove away without looking back. Defendant maintained he had not intended to run over, injure, or frighten anyone. He had been thinking about getting away and had not contemplated the possibility that someone might be on the other side of the gate.
Defendant quickly abandoned the car, but took from it a credit card and driver’s license belonging to Pamela. He was arrested several days later after having used the credit card several times.
Defendant was convicted, following a jury trial, of first degree felony murder with the special circumstance of killing during the course of a robbery (Pen. Code, §§ 187, 190.2, subd. (a)(17)(A)), robbery (id., § 211), and receipt of stolen property (id., § 496, subd. (a)). He appealed, arguing that the trial court erred by failing to provide a sua sponte instruction on accident as a defense to the crime of robbery, thus requiring reversal not only of his robbery conviction, but also of his conviction of first degree felony *994 murder and the special circumstance.[1] The Court of Appeal agreed. We reverse the judgment of the Court of Appeal.
DISCUSSION
I. Robbery
Robbery is defined as “the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.” (Pen. Code, § 211.) Robbery is larceny with the aggravating circumstances that “the property is taken from the person or presence of another . . .” and “is accomplished by the use of force or by putting the victim in fear of injury.” (People v. Gomez (2008) 43 Cal.4th 249, 254, fn. 2 [74 Cal.Rptr.3d 123, 179 P.3d 917].) In California, “[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.” (People v. Estes (1983) 147 Cal.App.3d 23, 28 [194 Cal.Rptr. 909].) It thus is robbery when the property was peacefully acquired, but force or fear was used to carry it away. (Gomez, at pp. 255-256.)
“As a general rule, no crime is committed unless there is a union of act and either wrongful intent or criminal negligence. [Citations.] This rule, which is ‘firmly embedded’ in ‘ “the principles of Anglo-American criminal jurisprudence” ’ [citation] is so basic that wrongful intent or criminal negligence ‘is an invariable element of every crime unless excluded expressly or by necessary implication’ [citations] and ‘penal statutes will often be construed to contain such an element despite their failure expressly to state it’ [citations].” (People v. King (2006) 38 Cal.4th 617, 622-623 [42 Cal.Rptr.3d 743, 133 P.3d 636]; and see Pen. Code, § 20 [“In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.”].) (3) The intent required for robbery has been described as the specific intent to deprive the victim of the property permanently. (People v. Huggins (2006) 38 Cal.4th 175, 214 [41 Cal.Rptr.3d 593, 131 P.3d 995]; People v. Guerra (1985) 40 Cal.3d 377, 385 [220 Cal.Rptr. 374, 708 P.2d 1252].) Thus, “the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal. . . .” (People v. Green (1980) 27 Cal.3d 1, 54 [164 Cal.Rptr. 1, 609 P.2d 468].)
Defendant concedes he committed a forcible act against Pamela, killing her, and that the act was motivated by his intent to steal Pamela’s property. *995 But he argues the forcible taking was not robbery unless he applied the force with the intent to strike or frighten Pamela. He cites People v. Bolden (2002) 29 Cal.4th 515 [127 Cal.Rptr.2d 802, 58 P.3d 931], where we recognized that the standard jury instructions adequately explain that “for the crime of robbery the defendant must form the intent to steal before or during rather than after the application of force to the victim, and that the defendant must apply the force for the purpose of accomplishing the taking.” (Id. at p. 556, italics added.) But we were not there concerned with whether the defendant intended to harm the victim, and our explanation that it is not robbery if the intent to steal is formed only after the forcible act was committed cannot reasonably be read to hold that the act by which the taking is accomplished must be motivated by the intent to apply force against the victim or cause the victim to feel fear.
Other cases cited by defendant also are not on point, explaining instead that the requisite forcible act may be an act committed after the initial taking if it is motivated by the intent to retain the property. (E.g., People v. Gomez, supra, 43 Cal.4th at p. 265 [evidence the defendant shot at the victim after taking the victim’s property supported the jury’s determination that the defendant used force to retain the property]; People v. Cooper (1991) 53 Cal.3d 1158, 1165, fn. 8 [282 Cal.Rptr. 450, 811 P.2d 742] [theft becomes robbery if the perpetrator peaceably gains possession but “resorts to force or fear while carrying away the loot”]; Miller v. Superior Court (2004) 115 Cal.App.4th 216, 222 [8 Cal.Rptr.3d 872] [it is robbery “where the perpetrator peacefully acquires the victim’s property, but then uses force to retain or escape with it”]; People v. Estes, supra, 147 Cal.App.3d at p. 29 [it is sufficient that the defendant uses force to prevent the retaking of the property and to facilitate his escape].) None of these cases holds it is not robbery unless the act of force or intimidation was motivated by an intent to apply force against the victim or to cause the victim to experience fear.
In sum, no authority cited to us provides positive support for defendant’s argument. Nor do we find anything in the law, or the facts of this case, to convince us robbery contains a heretofore unidentified element of intent to cause the victim to experience force or fear. The law does require that the perpetrator exert some quantum of force in excess of that “necessary to accomplish the mere seizing of the property.” (People v. Morales (1975) 49 Cal.App.3d 134, 139 [122 Cal.Rptr. 157]; accord, People v. Burns (2009) 172 Cal.App.4th 1251, 1258-1259 [92 Cal.Rptr.3d 51].) But even under his version of the facts, defendant drove Pamela’s car with more force than necessary to move it to a place of safety. And his motive for exerting the additional force was to retain the property and facilitate his escape. In short, *996 he committed the requisite forcible act with the requisite intent. It was robbery even if, as he claims, he did not intend to strike Pamela, but did so accidentally.[2]
II. Accident and Duty to Provide Sua Sponte Instruction on Accident
We turn now to the question of whether trial courts generally have a duty to instruct on accident, sua sponte, when the issue is raised by the evidence. We conclude they do not.
Penal Code section 26 states the statutory defense; “All persons are capable of committing crimes except those belonging to the following classes: [][]... [][] Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.” The defense appears in CALCRIM No. 3404, which explains a defendant is not guilty of a charged crime if he or she acted “without the intent required for that crime, but acted instead accidentally.” That the law recognizes a defense of accident does not, however, establish that trial courts have a duty to instruct on accident sua sponte. “In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury’s understanding of the case.” (People v. Martinez (2010) 47 Cal.4th 911, 953 [105 Cal.Rptr.3d 131, 224 P.3d 877].) That duty extends to “ ‘instructions on the defendant’s theory of the case, including instructions “as to defenses ‘ “that the defendant is relying on . . . , or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant’s theory of the case.” ”” ” (People v. Gutierrez (2009) 45 Cal.4th 789, 824 [89 Cal.Rptr.3d 225, 200 P.3d 847].) But “ ‘when a defendant presents evidence to attempt to negate or rebut the prosecution’s proof of an element of the offense, a defendant is not presenting a special defense invoking sua sponte instructional duties. While a court may well have a duty to give a “pinpoint” *997 instruction relating such evidence to the elements of the offense and to the jury’s duty to acquit if the evidence produces a reasonable doubt, such “pinpoint” instructions are not required to be given sua sponte and must be given only upon request.’ ” (People v. Saille (1991) 54 Cal.3d 1103, 1117 [2 Cal.Rptr.2d 364, 820 P.2d 588].)
One commentator opines that statutory provisions codifying “a defense for an actor who commits the act or omission constituting an offense ‘through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.’ ...[][]... have historical significance, [but] are now unnecessary restatements, in a defense format, of the requirements of the definitional elements of an offense. To say that it is a defense that the criminal conduct or omission was committed by a non-negligent accident, is simply to say that all result element offenses [i.e., offenses that require an intent to produce a particular result] require at least proof of negligence as to causing the prohibited result. This is already made clear by the culpability requirements of specific offense definitions . ...” (1 Robinson, Criminal Law Defenses (1984) Accident or Misfortune, § 63, p. 269, fns. omitted.) A trial court’s responsibility to instruct on accident therefore generally extends no further than the obligation to provide, upon request, a pinpoint instruction relating the evidence to the mental element required for the charged crime.
The California cases that have discussed the “defense” of accident, including those cited by defendant, generally support the commentator’s view. In People v. Jennings (2010) 50 Cal.4th 616, 674 [114 Cal.Rptr.3d 133, 237 P.3d 474], we explained, “[generally, the claim that a homicide was committed through misfortune or accident ‘amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime.’ ” In People v. Acosta (1955) 45 Cal.2d 538 [290 P.2d 1], this court reversed a conviction of willfully, unlawfully, and feloniously driving and taking a vehicle without the consent of the owner and with the intent to deprive the owner of title to and possession of the vehicle. The defendant had been in the backseat of a taxi when the taxi driver, believing himself to be under attack by the defendant, rolled out of the moving vehicle. The defendant then either climbed into the front seat and got behind the wheel of the taxi or attempted to steer the taxi from the backseat. This court found it would be accident if the defendant did not intend the criminal act—driving the taxi—or if the act had not been motivated by an intent to deprive the owner of title and possession of the vehicle. (Id. at pp. 543-544.) We thus recognized the “defense” would rebut the prosecution’s proof of a mental element of the crime.
In People v. Gonzales (1999) 74 Cal.App.4th 382 [88 Cal.Rptr.2d 111], the defendant was convicted of the willful infliction of corporal injury on a *998 cohabitant. Under the defense version of the events, the complaining witness’s injuries were caused when the defendant opened a door to gain entry into a room the victim was leaving and, without intending to do so, struck the victim in the face with the door. (Id. at p. 390.) The accident defense was raised to negate the mental element of the crime: the intent to inflict corporal injury. In People v. Lara (1996) 44 Cal.App.4th 102 [51 Cal.Rptr.2d 402], the court found the defense of accident was available in a prosecution for battery (“any willful and unlawful use of force or violence upon the person of another” (Pen. Code, § 242)), when there was evidence the defendant accidentally injured the victim while turning around in an attempt to free himself from her grasp. The court explained: “The accident defense amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime.” (Lara, at p. 110.) In People v. Jones (1991) 234 Cal.App.3d 1303 [286 Cal.Rptr. 163], a prosecution for attempted murder, there was evidence the defendant pointed a shotgun at an investigating police officer but did not intend to fire it; the shotgun discharged as the officer attempted to knock it aside. The court found the defense of accident was available because there was evidence from which a reasonable juror could have concluded the defendant did not intend to discharge the firearm. (Id. at p. 1314.) Similarly, in People v. Garnett (1908) 9 Cal.App. 194 [98 P. 247], the court reasoned it would not have been murder if the shot that killed the victim resulted from the accidental discharge of the defendant’s gun. (Id. at pp. 203-204.)
In each case, the defense of accident was raised to rebut the mental element of the crime or crimes with which the defendant was charged. Consequently, assuming the jury received complete and accurate instructions on the requisite mental element of the offense, the obligation of the trial court in each case to instruct on accident extended no further than to provide an appropriate pinpoint instruction upon request by the defense.[3]
III. Application to the Present Case
The trial court instructed the jury with CALCRIM No. 1600, explaining, as relevant, that the prosecution was required to show “the defendant used force or fear to take the property, or to prevent the person from resisting [and also *999 that] when the defendant used force or fear to take the property, he intended to deprive the owner of it permanently, or to remove it from the owner’s possession—or to remove it from the owner’s possession [so] that the owner would be deprived of the major portion of the enjoyment or value of the property. HQ The defendant’s intent to take property must have been formed before or during the time he used force or fear. ... [][].. . The use of force or fear can occur with the initial taking of the property, or it can occur while the defendant attempts to get away with the stolen property.” The instruction explains the act and the intent elements of the offense and that the act must have been motivated by the requisite intent: the intent to steal. (Pen. Code, § 211; People v. Green, supra, 27 Cal.3d at p. 54.) As defendant’s theory of accident concerning the use of force added a nonexistent element of intent to the offense, an instruction on that theory would have been improper even upon defense request.
But defendant argues that even if the instruction adequately explained the intent element for robbery, the jury likely was confused because it was also instructed with CALCRIM No. 540A: “A person may be guilty of felony murder even if the killing was unintentional, accidental or negligent.” That argument, like the others defendant has advanced, is premised on the theory that accident, in the sense that it represents the absence of an intent to cause the victim to experience force or fear, is a defense to robbery. As we have explained, that theory is incorrect. The instruction could not have caused the jury to fail to consider a potentially meritorious defense.
CONCLUSION
The judgment of the Court of Appeal is reversed.
Cantil-Sakauye, C. J., Baxter, J., Chin, J., Corrigan, J., and Woods, J.,* concurred.

 The only intent required for felony murder is the specific intent to commit the underlying felony. (People v. Booker (2011) 51 Cal.4th 141, 175 [119 Cal.Rptr.3d 722, 245 P.3d 366].) Thus, for purposes of first degree felony murder, it is irrelevant that Pamela’s death might have been the accidental result of a robbery, if the robbery was intentional.

 In a supplemental brief, defendant argues that because robbery is sometimes described as an assaultive crime, it must be concluded it not only requires an intent to steal, but also has an intent element comparable to the intent required for assault. He cites People v. Alvarez (1996) 14 Cal.4th 155 [58 Cal.Rptr.2d 385, 926 P.2d 365], where we observed, “[r]ape is an assaultive crime against the person, as are robbery and murder.” (Id. at p. 188.) That an offense has assaultive aspects does not mean it is an assault. In any event, even under defendant’s version of the facts, the evidence defendant drove blindly through the gates of the apartment complex at a speed of 25 to 30 miles per hour and made no effort to brake when he saw Pamela established the requisite willful' commission of an act that by its nature was likely to result in injury to another. (See People v. Williams (2001) 26 Cal.4th 779, 780 [111 Cal.Rptr.2d 114, 29 P.3d 197]; People v. Colantuono (1994) 7 Cal.4th 206, 217-218 [26 Cal.Rptr.2d 908, 865 P.2d 704].)

 The convictions in People v. Gonzales, supra, 74 Cal.App.4th at page 390, and People v. Jones, supra, 234 Cal.App.3d at page 1314, were reversed for the failure to provide instructions on accident sua sponte. In each case, the defendant would have been entitled to a pinpoint instruction relating his theory of accident to the evidence of intent, but only upon request. (See People v. Roldan (2005) 35 Cal.4th 646, 715 [27 Cal.Rptr.3d 360, 110 P.3d 289].) We disapprove People v. Gonzales, supra, 74 Cal.App.4th 382, and People v. Jones, supra, 234 Cal.App.3d 1303, to the extent they hold a sua sponte instruction on accident is required when the defense is raised to negate the intent or mental element of the charged crime.

Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.