Filed 12/16/14  P. v Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES EARL WILLIAMS,<br><br>    Defendant and Appellant. | D064688<br><br><br><br>(Super. Ct. No. SCE328118) |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Jr., Judge.  Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Robin Urbanski and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

In this shoplifting and robbery case involving the theft of merchandise from two retail stores on three separate occasions in 2013, a jury convicted James Earl Williams of

four offenses: petty theft at a Walmart store in February (count 1: Pen. Code, § 484) (all further statutory references are to the Penal Code); burglary and petty theft at the same Walmart store in March (counts 2 & 3: §§ 459, 484, respectively); and robbery at a Marshalls store in January (count 4: § 211). Williams thereafter admitted to be true sentence enhancement allegations that he had suffered several specified theft-related prior convictions (§ 666, subd. (a)), numerous specified probation denial priors (§ 1203, subd. (e)(4)), and two prison priors (§§ 667.5, subd. (b), 668). The court sentenced Williams to an aggregate state prison term of four years four months.

On appeal, Williams challenges his convictions based on three contentions. First, he contends there is insufficient evidence to sustain his count 4 robbery conviction because, under the reasoning of *People v. Mungia* (1991) 234 Cal.App.3d 1703, it is "doubtful" that any force he exerted when he collided with the Marshalls loss prevention officer—Juan Ruiz—as he (Williams) was running from the store while carrying the property he had stolen "would constitute the 'force' necessary to constitute the robbery force element."

Second, he contends his robbery conviction also must be reversed because the court prejudicially erred in denying his request for an instruction under CALCRIM No. 3404 on the defense of accident. In support of this claim, Williams asserts that "the instruction was justified by the evidence that Ruiz essentially caused the collision and [he (Williams)] made physical contact [with Ruiz] only by mistake and misfortune."

Last, he contends that all four of his convictions should be reversed because his Sixth Amendment right to effective assistance of counsel was violated when his trial

2

counsel failed to subpoena and call at trial two witnesses whose testimony (he asserts)

"would have helped [his] case by raising reasonable doubt."

For reasons we shall explain, we reject these contentions and affirm the judgment.

FACTUAL BACKGROUND

A. *January 2013[1] Robbery at Marshalls* (*Count 4*)

On January 5 Juan Ruiz was working as a loss prevention officer at the Marshalls store in El Cajon. Using a surveillance camera, Ruiz watched Williams walk into the shoe department, select a pair of Adidas shoes, and then, after trying them on, put them into a shopping bag he had carried into the store. Ruiz testified the shopping bag had comic characters on it and appeared to be empty before Williams put the shoes in it.

Armando Valdez, a loss prevention officer who worked with Ruiz that day, also watched Williams from the camera room of the store as Williams selected the Adidas, pulled the security sensors off the shoes, and placed the shoes in the bag he was carrying. Valdez later went to the shoe department and found the Adidas box he had seen Williams replace on the shelf after he removed the shoes. Only the security sensors were left in the box.

Ruiz—who is six feet tall, weighs 340 pounds, and was dressed in plain clothes—went to the floor of the store and was behind Williams when Williams walked out of the store. Ruiz testified that he ran around in front of Williams as Williams ran outside the store without paying for the merchandise he was carrying. Ruiz identified

---

[1] All further dates are to the calendar year 2013.

himself as a Marshalls loss prevention officer and showed Williams his Marshalls identification card. Ruiz tried to prevent Williams from leaving by cutting in front of Williams and turning to face him. Ruiz testified that Williams ran into him with one hand up and "pushed [him] out of the way" by putting his hand on Ruiz's shoulder.

Ruiz testified that when Williams pushed him out of the way, he (Ruiz) "disengage[d]" in accordance with a Marshalls policy requiring its personnel to stop apprehension attempts once a person places a hand on an employee. Williams ran through the parking lot carrying the merchandise he had taken. Ruiz then called the police.

B. *February Petty Theft at Walmart* (*Count 1*)

On February 24, in the men's department of a Walmart store in La Mesa, Williams quickly selected a number of items of men's clothing from the store displays without looking at their prices. A Walmart asset protection associate testified that this sort of "quick selection" indicates suspicious activity.

After taking the merchandise, Williams rode the store escalators to the automotive department on the second floor. He went down an aisle, pulled a reusable bag out of his pocket, and placed the merchandise inside the bag. Williams left the store with the merchandise without paying for it.

Near the exit, a Walmart asset protection associate approached Williams, identified herself as Walmart security, and asked him to return to the store. Williams did not comply with her request and fled through the parking lot with the merchandise he had taken.

4

C. *March Burglary and Petty Theft at the Same Walmart* (*Counts 2 & 3*)

On March 1 at the same La Mesa Walmart, Williams selected pieces of both men's and women's clothing and placed them inside a shopping cart. He then moved to the stationery department, which is the department closest to the exit. There he placed the merchandise he had taken into two reusable bags he had brought with him to the store. He then placed the bags into the shopping cart and left the store without the bags or merchandise.

A few minutes later, Williams returned to the Walmart stationery department, grabbed the reusable bags containing the merchandise he had selected, and left the store with the merchandise without paying for it. La Mesa police arrested Williams a few minutes later outside the store.

## DISCUSSION

### I. *SUFFICIENCY OF THE EVIDENCE* (*COUNT 4*: *ROBBERY*)

Williams first contends there is insufficient evidence to sustain his count 4 robbery conviction because, under the reasoning of *People v. Mungia, supra,* 234 Cal.App.3d 1703, it is doubtful that any force he exerted when he collided with the Marshalls loss prevention officer—Ruiz—as he (Williams) was running from the store carrying the property he had stolen "would constitute the 'force' necessary to constitute the robbery force element." We reject this contention.

5

A. *Applicable Legal Principles*

1. *Robbery*

"Robbery is defined as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.'" (*People v. Anderson* (2011) 51 Cal.4th 989, 994 (*Anderson*), quoting Pen. Code, § 211.)

In *Anderson*, the California Supreme Court explained that "[r]obbery is larceny with the aggravating circumstances that 'the property is taken from the person or presence of another . . . ' and 'is accomplished by the use of force or by putting the victim in fear of injury.' [Citation.] In California, '[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.' [Citation.] It thus is robbery when the property was peacefully acquired, but force or fear was used to carry it away." (*Anderson*, *supra*, 51 Cal.4th at p. 994.)

*Anderson* also explained that "[t]he intent required for robbery has been described as the specific intent to deprive the victim of the property permanently. [Citations.] Thus, 'the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal . . . .'" (*Anderson*, *supra*, 51 Cal.4th at p. 994.)

The amount of force required to sustain a robbery conviction is "some quantum of force in excess of that 'necessary to accomplish the mere seizing of the property.'" (*Anderson*, *supra*, 51 Cal.4th at p. 995.) Even a "slight push" or "tap" against the victim is sufficient. (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246, disapproved on other grounds in *People v. Mosby* (2004) 33 Cal.4th 353, 365, fns. 2, 3.)

6

2. *Standard of review*

When assessing a challenge to the sufficiency of the evidence supporting a conviction, we apply the substantial evidence standard of review, under which we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Thus, "[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment." (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.)

"If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the [trier of fact's] verdict may lie in the evidence he ignores." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

7

B.  *Analysis*

We are guided in our analysis by the decision in *People v. Garcia, supra*, 45 Cal.App.4th at page 1246.  In *Garcia* "[t]he evidence [showed that the] defendant approached the cashier while the register drawer was open and gave her a slight push, 'like a tap,' on her shoulder with his shoulder.  Fearful defendant might be armed, the cashier moved away.  Defendant then reached into the open register, grabbed the money and escaped.  The cashier was not injured." (*Ibid.*)  In concluding the "slight push" was sufficiently forcible to establish the force element of robbery, the Court of Appeal stated: "The defendant did not simply brush against the cashier as he grabbed for the money.  He intentionally *pushed against her to move her out of the way* so he could reach into the register. . . .  [P]ushing the cashier went beyond the 'quantum of force which [was] necessary' to grab the money out of the cash register.  We agree defendant appears to have been rather polite in his use of force, giving the cashier a mere 'tap.'  Nevertheless, for purposes of the crime of robbery, the degree of force is immaterial." (*Ibid.*)

Similarly here, substantial evidence supports Williams's count 4 robbery conviction by establishing that Williams, like the defendant in *Garcia*, accomplished the theft by pushing the victim out of the way.  Specifically, Ruiz testified that he identified himself to Williams as a Marshalls loss prevention officer and showed Williams his Marshalls identification card after Williams exited the store without paying for the merchandise he was carrying.  Ruiz also testified that he tried to prevent Williams from leaving by running in front of him to cut him off and then turning around to face him.  Ruiz further testified that Williams ran into him with one hand up, "pushed [him] out of

8

the way" by putting his hand on Ruiz's shoulder, and then ran away with the stolen merchandise.

Ruiz's foregoing testimony constitutes substantial evidence from which a reasonable trier of fact could find that Williams, in accomplishing his theft of the Marshalls merchandise, pushed the loss prevention officer out of the way as Williams was running away from the store with the merchandise, and this forcible act was motivated by his intent to steal the merchandise.

Williams contends, however, that the evidence is insufficient to support his robbery conviction because "it was not [he] who applied force, but [Ruiz] and the law of physics" that applied force, and, thus, "the only physical contact was caused by an act over which [he (Williams)] had no control."

Williams's attempt to characterize his physical contact with Ruiz outside the Marshalls store as an inadvertent and unintentional collision is unavailing. In applying the substantial evidence standard of review, as already discussed, we must view the evidence in the light most favorable to the judgment (*People v. Johnson*, *supra*, 26 Cal.3d at p. 578), and we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314). Here, Ruiz explicitly testified on direct examination that Williams "*pushed me out of the way* and ran to the parking lot." (Italics added.) When questioned further by the prosecutor, Ruiz reiterated, "I ran in front of [Williams], and he . . . just *pushed me out of the way*." (Italics added.) The prosecutor asked Ruiz to more specifically describe what Williams did, and Ruiz replied that

9

Williams "*used one hand to push me out of the way*." (Italics added.) Later, when defense counsel cross-examined Ruiz and characterized Williams's physical contact with Ruiz as "run[ning] into you," Ruiz disagreed and stated, "Actually it was more of a push."

Williams's claim that it was Ruiz, not Williams, who applied the force during the collision is meritless because it is based not on the evidence viewed in the light most favorable to the judgment, but on an interpretation that essentially asks this court improperly to reweigh Ruiz's testimony, give little weight to his testimony that Williams was running from the store with stolen merchandise after Ruiz identified himself as a loss prevention officer, and to disregard Ruiz's explicit and repeated testimony showing that Williams did not just run into Ruiz, but rather he used one hand to *push Ruiz out of the way*. Ruiz's testimony is substantial evidence from which a reasonable jury could find that Williams used force to retain the merchandise he was carrying after the Marshalls loss prevention officer tried to stop him, and in doing so he was motivated by the intent to steal that merchandise. By failing to present all the relevant evidence on the issue of whether the force he used force in stealing the merchandise was sufficient to constitute robbery, and in failing to present the evidence in the light most favorable to the People, Williams has failed to meet his burden of showing the evidence is insufficient to support his robbery conviction. (See *People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.)

Relying on *People v. Mungia*, *supra*, 234 Cal.App.3d 1703, and highlighting Ruiz's testimony that he (Ruiz) is six feet tall and weighs 340 pounds, Williams asserts that Ruiz "was younger and 90 pounds bigger than [him]," and, thus, "it is doubtful" that any force he (Williams) exerted when he collided with Ruiz as he was running away from

10

the store with the merchandise "would constitute the 'force' necessary to constitute the robbery force element."

Williams's reliance on *Mungia* is unavailing. In that purse-snatching robbery case, the Court of Appeal concluded that substantial evidence supported the jury's implied finding that the defendant used sufficient "force" within the meaning of the robbery statute (§ 211) to satisfy the force element of that offense because it showed the defendant first "shoved" his eight-months-pregnant victim "to overcome any resistance by her," and "then, in a separate motion, snatched the purse from her shoulder." (*People v. Mungia, supra,* 234 Cal.App.3d at pp. 1708-1709.) The Court of Appeal reasoned that that the defendant's larger size and greater strength supported the jury's finding that he used more force than was necessary to accomplish the snatching of the purse. (*Id*. at p. 1709.) The *Mungia* court did not hold, as Williams suggests, that a defendant uses insufficient force to satisfy the force element of robbery when he collides with a victim who is younger and larger than the victim.

For all of the foregoing reasons, we conclude the evidence is sufficient to support the jury's finding that Williams used sufficient force to satisfy the force element of robbery.

## II. *CLAIM OF INSTRUCTIONAL ERROR*

Williams also claims his robbery conviction must be reversed because the court prejudicially erred in denying his request for an instruction under CALCRIM No. 3404 on the defense of accident. In support of this claim, Williams asserts that the instruction was justified by the evidence that the Marshalls loss prevention officer, Ruiz, essentially

11

caused the collision outside the store, and that [he (Williams)] made physical contact [with Ruiz] only by accident and misfortune. We reject Williams's claim of instructional error.

A. *Background*

After both parties rested their cases, defense counsel requested that the court instruct the jury with CALCRIM No. 3404 as follows on the defense of accident:

> "The defendant is not guilty of robbery if he acted without the intent
> required for that crime but acted instead accidentally. You may not
> find the defendant guilty of robbery unless you are convinced
> beyond a reasonable doubt that he acted with the required intent."

Acknowledging that the requisite intent for robbery is an intent to steal, Williams's counsel asserted that "there is a component that there has to be a use of force and not some type of incidental contact" and claimed that the instruction was appropriate because Williams lacked the intent to push Ruiz or use force against him.

The prosecutor objected to the instruction on the grounds that the requisite intent for robbery is only the intent to steal, and, thus, the defense theory of accident was incorrect as a matter of law and would potentially confuse the jury.

The court denied defense counsel's request for an instruction on the defense of accident under CALCRIM No. 3404, finding that the only evidence offered at trial was that Williams pushed Ruiz out of the way as he fled the scene with the stolen merchandise, which suggested that Williams acted intentionally, and thus the contact was not an incidental contact.

12

B. *Applicable Legal Principles*

"'The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty "to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues."'" (*People v. Alexander* (2010) 49 Cal.4th 846, 921, quoting *People v. Saddler* (1979) 24 Cal.3d 671, 681.) Thus, a trial court should not give a requested instruction that is irrelevant or inapplicable to the issues and evidence in the case. (*People v. Cross* (2008) 45 Cal.4th 58, 67; accord, *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 ["It is error to give an instruction which . . . has no application to the facts of the case."].)

We review de novo a claim of instructional error. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

C. *Analysis*

We conclude that (1) the court did not err in denying Williams's request for an instruction on the defense of accident under CALCRIM No. 3404 and that (2) even if we were to assume the court erred, the assumed error was harmless under any standard of prejudice. Our decision is supported by the decision in *Anderson*, *supra*, 51 Cal.4th 989.

In *Anderson* a jury convicted the defendant of first degree felony murder with the special circumstance of killing during the course of a robbery based on evidence that, in attempting to steal the victim's car, he killed her by running over her while he was driving the car out of the apartment complex at night. (*Anderson*, *supra*, 51 Cal.4th. at pp. 992-

13

993.) On appeal, the defendant conceded both that he committed a forcible act against the victim and that the act was motivated by his intent to steal the victim's car. (*Id*. at p. 993.) Relying on his own testimony that he swerved the car before he ran over the victim, that he had been thinking about getting away, and that he had not contemplated that he might hit someone, the defendant claimed that the trial court erred in failing to give a sua sponte instruction on the defense of accident. (*Id*. at p. 993.) In support of this claim of error, the defendant argued that his forcible taking of the car was not a robbery unless he applied the force with the intent to frighten the victim or strike her with the stolen car. (*Id*. at pp. 994-995.) The California Supreme Court rejected this argument and the defendant's claim of instructional error, explaining that the requisite intent for robbery is the "specific intent to deprive the victim of the property permanently" (that is, the intent to steal) (*id.* at p. 994), not the "intent to apply force against the victim or to cause the victim to experience fear." (*Id.* at p. 995.) The Supreme Court reasoned that, "[a]s defendant's theory of accident concerning the use of force added a nonexistent element of intent to the offense, an instruction on that theory would have been improper even upon defense request." (*Id*. at p. 999.)

The same reasoning applies here. Williams's claim that he was entitled to an instruction on the defense of accident is based on his assertion that the physical contact between Ruiz and him occurred simply by accident. However, as *Anderson* explains, the accidental use of force in perpetrating a theft is not a defense to a robbery charge because the requisite intent for robbery is the specific intent to steal, not the intent to "apply force against the victim or to cause the victim to experience fear." (*Anderson*, *supra*, 51

14

Cal.4th. at p. 995.) Like the rejected theory of accident in *Anderson*, Williams's theory of accident improperly adds to the crime of robbery what the *Anderson* court described as a "nonexistent element of intent," specifically, the "intent to cause the victim to experience force of fear." (*Id.* at p. 999.)

Williams's reliance on *People v. Gonzales* (1999) 74 Cal.App.4th 382, is unavailing. In *Gonzales*, the Court of Appeal held that the trial court erred in failing to instruct the jury sua sponte on the defense of accident where the defendant was charged with corporeal injury on a cohabitant and substantial evidence supported the defendant's theory that the victim's injuries were caused by an accident.[2] (*Id.* at p. 390.) In so holding, the Court of Appeal reasoned that the accident instruction was appropriate because the defendant's theory of accident, if believed by the jury, would have negated proof of an element of the offense, namely, the intent to inflict willful corporal injury on the victim. (*Ibid.*) Here, in contrast, Williams's accident theory would not have negated an element of the charged offense because, as already discussed, robbery does not require an intent to apply force (or fear) against the victim. (*Anderson*, *supra*, 51 Ca1.4th at p. 995.) Thus, *Gonzales* is not applicable.

Even if we were to assume the court erred, we would conclude that any such error was harmless under any standard of prejudice because no evidence supported Williams's

---

[2]     In *Anderson*, *supra*, 51 Cal.4th at page 998, footnote 3, the Supreme Court disapproved *Gonzales*, *supra*, 74 Cal.App.4th 382, "to the extent [it] hold[s] a sua sponte instruction on accident is required when the defense is raised to negate the intent or mental element of the charged crime."

15

theory that his collision with Ruiz was accidental. Williams did not testify at trial, and Ruiz consistently and repeatedly testified that Williams pushed him out of the way as Williams ran away from the Marshalls store carrying the stolen merchandise.

For all of the foregoing reasons, we conclude the court properly denied Williams's request for a defense-of-accident instruction.

### III. *CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL*

Last, Williams claims that all four of his convictions should be reversed because his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel failed to subpoena and call at trial two witnesses—Officer Reilly[3] of the El Cajon Police Department and Walmart Loss Prevention Officer Michael Perez—whose testimony "would have helped [his] case by raising reasonable doubt." We reject this claim.

A. *Background*

At Williams's request the court held a *Marsden*[4] hearing during which Williams sought to relieve his counsel in part because she had decided not to call Officer Reilly and Perez as defense witnesses. At the hearing Williams's defense counsel explained that she had reviewed prior statements from both Officer Reilly and Perez, and she had decided that calling them as witnesses would not be in Williams's best interests.

---

3    Officer Reilly's full name does not appear in the record.

4    *People v. Marsden* (1970) 2 Cal.3d 118.

16

With respect to Officer Reilly, defense counsel told the court that Officer Reilly's report of the January robbery at the Marshalls store indicated that Williams had pushed the loss prevention officer, Ruiz, not on the sidewalk curb as he testified at trial, but in the parking lot. Defense counsel explained that she made the "tactical decision" not to call Officer Reilly both because this discrepancy was not sufficiently significant to undermine Ruiz's testimony, and because she thought it was not a good idea to have Officer Reilly give testimony that would have "highlight[ed] that a push happened as opposed to perhaps incidental or accidental contact."

Williams told the court that his counsel should have called Perez as a witness because Perez could not positively identify Williams at the preliminary hearing as the perpetrator of the March theft committed at the Walmart store. Defense counsel responded by indicating to the court that Perez's testimony was unhelpful because two eyewitnesses had testified and had positively identified Williams as the perpetrator of that offense.

The court denied Williams's *Marsden* motion for new appointed counsel.

B. *Applicable Legal Principles*

The law governing Williams's ineffective-assistance-of-counsel claim is settled. A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 (*Strickland*); *People v. Frye* (1998) 18 Cal.4th 894, 979 (*Frye*).) To establish a denial of the right to effective assistance of counsel, a defendant must show (1) his or her counsel's performance was below an objective standard of reasonableness

17

under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland*, at pp. 687, 691-692; *Frye*, at p. 979.)

To demonstrate prejudice, a defendant asserting an ineffectiveness claim on appeal must show a reasonable probability he or she would have received a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Frye*, 18 Cal.4th at p. 979.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

*Strickland* explained that "[j]udicial scrutiny of counsel's performance must be *highly deferential* [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (*Strickland*, *supra*, 466 U.S. at p. 689, italics added.) *Strickland* also explained that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Ibid.*)

The California Supreme Court has explained that "'[w]hen a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation.'" (*People v. Kelly* (1992) 1 Cal.4th 495, 520.) "A reviewing court will not second-guess trial counsel's reasonable tactical decisions." (*Ibid*.)

18

C. *Analysis*

Applying a highly deferential standard of scrutiny and indulging a strong presumption that the conduct of Williams's trial counsel fell within the wide range of reasonable professional assistance, as we must (*Strickland*, *supra*, 466 U.S. at p. 689), we reject Williams's ineffective-assistance-of-counsel claim because the decisions made by his trial counsel not to call Officer Reilly and Perez as defense witnesses were reasonable tactical decisions that this court will not second-guess. (See *People v. Kelly*, *supra*, 1 Cal.4th at p. 520.)

Specifically, defense counsel's decision not to call Officer Reilly was a sound trial tactic because, as she explained to the court at the *Marsden* hearing, Officer Reilly's testimony would have "highlight[ed]" the testimony of Marshalls's loss prevention officer, Ruiz, that Williams pushed Ruiz out of the way as Williams fled the scene with the stolen merchandise.

Defense counsel's decision not to call Perez, who was one of Walmart's loss prevention officers, also was a sound trial tactic because, as defense counsel explained to the court, two witnesses had already positively identified Williams as the perpetrator of the March 2013 theft committed at the Walmart store. Also, the reporter's transcript of Perez's testimony at the preliminary hearing in this matter shows that, had he testified at trial, he could have offered further inculpatory evidence against Williams because his preliminary hearing testimony confirmed key aspects of the crime. For example, Perez testified at the preliminary hearing that Williams placed merchandise in a reusable bag he

19

had brought with him, he first left the bag in the greeting card department, he went outside the store for a few minutes, and then he returned to the store and grabbed the bag.

As sound tactical reasons supported defense counsel's decisions not to call Officer Reilly and Perez as witnesses, we conclude Williams has failed to meet his threshold burden of demonstrating that his counsel's performance was below an objective standard of reasonableness under prevailing professional norms.  Accordingly, we need not address Williams's related contention that he suffered prejudice as a result of the claimed ineffective assistance of counsel, and, thus, we affirm the judgment.

## DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

20