Filed 6/6/24

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AARON STERLING GEFRERER,<br><br>    Defendant and Appellant. | D082223<br><br><br>(Super. Ct. No. BAF2101033) |

APPEAL from a judgment of the Superior Court of Riverside County, Timothy F. Freer, Judge.  Affirmed.

Arthur Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.


The People charged Appellant Aaron Sterling Gefrerer with two counts of robbery of two banks.  On each occasion, the perpetrator calmly handed a

note to the teller demanding $5,000 and stating, "Don't play." Both tellers testified at trial that they were afraid and gave the perpetrator the money. Gefrerer purposely did not request an instruction on the lesser included offense of grand theft because it conflicted with his defense that he was not the perpetrator of the robbery. Gefrerer's counsel told the jury that the People met their burden to prove that the two robberies took place but argued the evidence failed to establish Gefrerer committed the robberies. The jury convicted Gefrerer on both counts.

On appeal, Gefrerer argues the court erred by failing to sua sponte instruct the jury on grand theft as a lesser included offense of robbery. He contends that the bank policies instructing tellers to comply with demands during robberies, along with his nonaggressive demeanor during the robberies, provide substantial evidence that required the court to instruct the jury on theft. We disagree that substantial evidence exists to support a theft instruction. Even if the record contained substantial evidence, we conclude the doctrine of invited error would bar Gefrerer's argument that the court erred by not providing the theft instruction. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Gefrerer was charged with two counts of robbery (Pen. Code,[1] § 211) arising out of two separate incidents.

The first incident occurred on April 28, 2021, at a U.S. Bank location in Hemet, California. That afternoon, Gefrerer entered the bank, wearing a medical face mask, and walked around the check-writing stand several times.

At the time, Selene B. was working behind a window as a teller. She invited Gefrerer to her window after he said he was looking for a pen. He requested a withdrawal slip, which Selene B. provided. Gefrerer handed

---

[1] Further statutory references are to the Penal Code.

2

back the slip with a note stating, "Give me $5,000. Don't play." After Selene B. read the note several times, she felt she "had to comply" because she was "afraid that [her] coworkers and the two customers . . . were going to be hurt." She placed her level of fear at a 10 on a scale of 1 to 10. She gathered and counted the bills in the cash machine, wanting to comply exactly due to her fear he would become upset. Selene B. was also afraid she was taking too long and he would become upset. When she was finished counting the money, she handed it to Gefrerer. When asked why she did not pursue him, she explained: "They always say that you could—they don't recommend for us to follow, because we just don't know the situation, how it would turn out. The policy and procedure states comply, to try to get a note, like a Post-it or something, and write the details of the description of what they were wearing . . . ."

After Gefrerer left the bank, Selene B. reported the incident to her manager. The incident caused Selene B. to develop anxiety and depression and resign from her position.

At trial, defense counsel questioned Selene B. regarding the appearance of the perpetrator, including his clothing, the visible portion of his face, his height, and any tattoos. Counsel also asked Selene B. about the setup and location of the bank. Counsel did not follow up after she mentioned the policy and procedures of the bank during a robbery.

The second incident occurred on May 1, 2021, at a U.S. Bank location in Banning, California. That morning, Gefrerer entered the bank, got in line, and eventually approached the window of Diana S., who was working as a bank teller. He calmly asked for a withdrawal slip, wrote something down on it, and handed it back to Diana S. When she saw Gefrerer had written, "Give me 5000 don't play," she was in shock and froze. Even though she did not see

3

a weapon, she was scared and concerned for the safety of those in the bank. She explained, "for someone to come up to me and me not knowing if there's a weapon or I could get hurt or the people at my work could get hurt, that was traumatizing to me." She knew that the procedure under such circumstances was to give the person the money. She took out money from her drawer and gave it to Gefrerer. She then informed her coworkers over an internal messaging system that she had been robbed.

At trial, defense counsel focused her questioning of Diana S. on the appearance of the robber and the setup of the bank. Counsel also asked for the "top lesson" from the workplace training on how to handle a robbery, and Diana S. responded: "[I]f the robber asks for the money, just give him the money." Counsel did not ask any follow-up questions regarding this training.

After informal discussions regarding the lesser included offense of grand theft, the court explained, and defense counsel confirmed, "it would be contrary to the entire defense theory of the case, which is that the district attorney has failed to prove beyond a reasonable doubt sufficient evidence for witness identification for the existing charges under Counts 1 and 2."

Indeed, in closing, defense counsel conceded that the prosecution met its burden to establish that the crimes were robberies and explained to the jury that the only issue in the case was the identification of the perpetrator:

> "When I stood up here and talked to you in the beginning, I told you this case was about a whodunit, not about a what is it. And I still stand firm that the People have met their burden, two robberies took place. You will easily be able to check that box and acknowledge that two robberies happened. The issue is who did this."

Counsel proceeded to discuss the evidence of the witnesses' description of the perpetrator of the robberies compared with Gefrerer, focusing on the witnesses' failure to remember any tattoos on the perpetrator, while Gefrerer

4

had tattoos that would have been visible. She further stated, "I believe that the witnesses, the bank tellers specifically, were traumatized." She finished by arguing, as to identity, "The People have not met their burden. They have not proven beyond a reasonable doubt. And, in fact, if anything, there's a lot more factors in my client's favor that he is not the one that did the Bank Robbery 1 or 2, and he is not the one that traumatized those ladies."

The jury convicted Gefrerer on both counts.

## DISCUSSION

Gefrerer argues the court erred by failing to instruct the jury on the lesser included offense of grand theft because the evidence of his nonthreatening demeanor and the bank's policy to give the money to a person who demands it would permit a reasonable factfinder to conclude he did not take the money by force or fear. We conclude: (1) the record does not contain substantial evidence that Gefrerer took property without using force or fear; and (2) even if such substantial evidence existed, Gefrerer would be precluded from asserting the instructional error based on the doctrine of invited error.

1. *Substantial Evidence*

Courts are obligated to instruct the jury on lesser included offenses "where there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense." (*People v. DePriest* (2007) 42 Cal.4th 1, 50 (*DePriest*).) We independently review a trial court's decision not to instruct on the lesser included offense. (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

The Penal Code defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Theft

5

is the felonious taking of personal property of another. (§§ 484, subd. (a), 487, subd. (a) [defining the minimum value of property required for grand theft].) Theft involves the same elements as robbery, except that the taking does not occur by means of force or fear. (*DePriest, supra,* 42 Cal.4th at p. 50.) Thus, theft is a lesser included offense of robbery. (*Ibid.*)

" ' "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [her] property." ' [Citation.] 'The extent of the victim's fear "do[es] not need to be extreme . . . ." ' [Citation.] '[T]he fear necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' " (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319 (*Bordelon*).) As long as the victim has subjective fear, "it makes no difference whether the fear is generated by the perpetrator's specific words or actions designed to frighten, or by the circumstances surrounding the taking itself." (*People v. Flynn* (2000) 77 Cal.App.4th 766, 772 (*Flynn*).)

Gefrerer acknowledges that the tellers were "shocked and frightened" but contends there was evidence the bank's policy in combination with his calm demeanor caused them to acquiesce to the demand, rather than fear. We disagree. Testimony by a witness that she was "trained as a teller to remain calm and follow robbers' instructions during a robbery" is not substantial evidence to support a theft instruction when the teller testifies she "was in fact 'shocked' and 'traumatized' by [the robber's] actions." (*Bordelon, supra,* 162 Cal.App.4th at pp. 1319–1320.) And it is not relevant that the shock and trauma derived from written words rather than outward actions. (See *Flynn, supra,* 77 Cal.App.4th at p. 772.)

Gefrerer also argues "the contents of the note, 'don't play' can reasonably be interpreted not as a threat but as an indication of a serious invocation of the 'hand it over' policy." We disagree that this was a reasonable interpretation of the note and that this point would be relevant. There is no evidence that Gefrerer was aware of the bank's policy, let alone that he sought to invoke it. And if such evidence did exist, it is the subjective fear of the victim, not the existence of intent to cause fear by the perpetrator, that is relevant. (*People v. Anderson* (2011) 51 Cal.4th 989, 995; *Bordelon, supra*, 162 Cal.App.4th at p. 1319.) Here, both victims testified as to their subjective fear caused by the threating note.

Selene B. testified that she was afraid, and she rated that fear as a 10 on a scale of 1 to 10. Her testimony clearly establishes that she complied with the note due to that fear caused by Gefrerer's note. For example, she stated, "The message that I got was comply and don't get the individual upset, that may trigger for him to do who knows what," and "my first instinct was just to get him out . . . I was just afraid for him to be upset that I was taking too long . . . . I just don't want anybody to get hurt." She testified that she subsequently locked the door and did not pursue the robber because of the bank's policy, but she did not state that she complied with the demand because of the policy, even in part.

Likewise, Diana S. testified that she was in "shock" throughout the incident, even after Gefrerer exited the bank, and "traumatiz[ed]" by the experience. Her testimony also firmly establishes she acted based on these feelings. She explained her shock caused her to initially "just st[an]d there . . . and just stare[ ] at the note" before she gave him some money without counting. She explained that the incident traumatized her because he "c[a]me up to me and [I did] not know[ ] if there's a weapon or I could get

7

hurt or the people at my work could get hurt." Diana S.'s mention of the policy to comply, as she stood looking at the note in shock, would not permit a reasonable jury to conclude that the robbery occurred without the use of fear.

Gefrerer's citation to *People v. Brew* (1991) 2 Cal.App.4th 99 does not alter our analysis. He cites *Brew* as an example of a case in which the trial court erred by not giving a theft instruction because "the evidence raised the issue whether [the victim's] fear was necessary for the theft." In that case, the court of appeal concluded that the trial court erred by failing to instruct the jury on theft because substantial evidence arguably supported a finding that the offense occurred without force or fear. (*Id.* at p. 105.) The facts of the offense and the defense strategy at trial, however, distinguish *Brew* from the present case. In *Brew*, the defendant committed the offense by coming behind the counter and taking money after the cashier opened the cash register. (*Ibid.*) The cashier moved out of the way; during the offense, the defendant "said nothing to [the cashier]. Nor did he touch her." (*Ibid.*) To the contrary, in this case, Gefrerer communicated an implied threat directly to the tellers and relied on them to comply with his demand to provide him the money. Additionally, in *Brew*, "[i]n his defense at trial, appellant argued strongly against a finding of fear or force." (*Ibid.*) On the other hand, here, Gefrerer conceded at trial that two robberies occurred.

In sum, the court properly declined to instruct the jury as to grand theft.

2. *Invited Error*

Even if the lesser included offense of theft, but not robbery, was supported by substantial evidence, Gefrerer would be precluded from claiming that instructional error on appeal under the doctrine of invited error.

8

" '[A] defendant may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence. [Citations.] In that situation, the doctrine of invited error bars the defendant from challenging on appeal the trial court's failure to give the instruction.' [Citation.] The record here shows that defendant's 'lack of objection to the proposed instruction was more than mere unconsidered acquiescence.' [Citation.] Rather, defendant did not want the instructions because they were inconsistent with his defense that he did not commit the crime at all. . . . Accordingly, he cannot complain on appeal of the court's failure to give the instruction." (*People v. Horning* (2004) 34 Cal.4th 871, 905–906.)

The record is abundantly clear that Gefrerer discouraged the court from providing a grand theft instruction for tactical reasons. After informal discussions with the parties, which were not reported or transcribed, the court explained on the record that the defense did not want the grand theft instruction because it conflicted with the defense theory that Gefrerer did not commit the robberies. Defense counsel confirmed the court's summary of the conversation. This strategy was clear throughout trial. During the cross-examination of the tellers, defense counsel focused on their memories of the appearance of the perpetrator and used their states of fear, shock, and trauma to suggest that their ability to identify the perpetrator was impaired. Then, in closing, defense counsel conceded that the prosecution had carried the burden of proving that two robberies had taken place. Under these circumstances, the doctrine of invited error bars Gefrerer from claiming on appeal that the court erred by failing to instruct the jury on a lesser included offense of robbery.

DISPOSITION

We affirm the judgment.

HUFFMAN, Acting P. J.

WE CONCUR:

BUCHANAN, J.

RUBIN, J.