Filed 2/7/14  P .v. Avina CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GUILLERMO AVINA,<br><br>    Defendant and Appellant. | G047963<br><br>(Super. Ct. No. 11HF0667)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed.

Law Offices of J. David Nick and J. David Nick for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Guillermo Avina represented himself at trial. The jury found him guilty of possession of marijuana for sale (Health & Saf. Code, § 11359; all undesignated section references are to the Health and Safety Code unless otherwise stated), transportation of marijuana (§ 11360, subd. (a)), and two misdemeanors (Veh. Code, § 23152, subds. (a) [driving under the influence of alcohol], (b) [driving with .08 or greater blood-alcohol content]). The court sentenced defendant to three years in prison. On appeal, defendant challenges his felony convictions, contending the trial court failed to instruct the jury pursuant to sections 11362.765, subdivision (c) and 11362.775. We affirm.

I

FACTS[1]

On January 19, 2011, at approximately 2:51 a.m., Officer Shawn Preasmyer stopped defendant's vehicle in the area of MacArthur Boulevard and Birch for an unsafe lane change. Upon contacting the driver, defendant, Preasmyer observed objective symptoms of impairment, including a strong odor of an alcoholic beverage. According to Preasmyer, the vehicle reeked of marijuana. He arrested defendant for driving under the influence after defendant performed field sobriety tests and took a breath test.

The officer searched the vehicle and found "some marijuana and a couple vials of what appeared to be hash oil" near the center console. He also found what he described as pay/owe sheets with "several hundred" entries. The sheets contained a number of names and addresses, including addresses from outside California. Preasmyer also found approximately one pound of marijuana and $1,580 inside the vehicle. He opined the marijuana was possessed for sale and stated his opinion would not change if defendant had a valid state-issued medical marijuana card.

---

[1] Because defendant only challenges his felony convictions, the facts relating to his Vehicle Code violations are set forth summarily and only to the extent they relate to his felony convictions.

2

Preasmyer remembered defendant saying he had a medical marijuana card and was a caregiver for HIV and cancer patients. The parties stipulated defendant's State of California medical marijuana patient identification card was valid on January 19, 2011. When he was booked into jail, defendant was asked his occupation and he answered, "Director of the Slauson Patient Association."

Detective Elijah Hayward of the narcotic division of the Newport Beach Police Department was given a hypothetical question that closely tracked the facts relating to the marijuana, hash oil, money, and pay/owe sheets found in defendant's vehicle. Hayward opined the marijuana was possessed for sale. On cross-examination, Hayward admitted a marijuana collective must keep records of transactions it makes.

*Defense*

Richard Brumfield, Jr., has throat cancer and posttraumatic stress syndrome. He has a physician's recommendation to use medical marijuana, and holds a State medical marijuana card. Brumfield formed Pacific Coast Wellness and Evolution Center (PCW) in June 2009, and is its president. PCW is a mutual not for profit medical marijuana primary caregiver association. Brumfield said that as president of PCW, he made sure he and defendant were in compliance with state and federal law.

Defendant has been Brumfield's care provider since January 1, 2010. Brumfield lived at defendant's residence in Westminster, along with three other patients. He lived there for two years without charge. Defendant provided him food, housing, took him to the hospital when needed, and did not charge him for the marijuana defendant supplied him. At no time did Brumfield ever see defendant "come home with excessive money."

Brumfield recognized all of the addresses on what the detective termed pay/owe sheets. He said defendant never sent medical marijuana to any of the addresses and that one of the addresses belonged to Green Country Chiropractic Clinic. Brumfield

3

said the Arizona address on one of the alleged pay/owe sheets belonged to a business, an alternative cancer and treatment center and osteopathic clinic.

On the night defendant was arrested, Brumfield was expecting defendant to bring home a pound of marijuana. He was shown the marijuana seized that night and said it was packaged in the same fashion as other marijuana brought to the residence. Brumfield said smoking marijuana is not good for him because of his throat cancer, so he uses a process to reduce it to a liquid form.

Michael Delao and his girlfriend lived at defendant's residence in Westminster. Delao has been a medical marijuana card holder for 11 years. According to Delao, defendant has been a caregiver for approximately nine or 10 years, was caring for Richard Brumfield at the time of the arrest, and was the acting treasurer of PCW.

Carolynn Ornelas is a member of PCW and lived at defendant's residence in Westminster, along with Brumfield. Defendant was her caregiver. She said defendant never sold her marijuana and neither has she ever known him to be a marijuana dealer. She said defendant's intentions were to help his patients.

Chezami Veto is defendant's spouse. She said there were three patients living at defendant's residence at the time of his arrest. She confirmed defendant gave Brumfield food and transported him to doctor appointments and the hospital. She said she has never known defendant to be a drug dealer.

II

DISCUSSION

In 1996, the electorate enacted section 11362.5, the Compassionate Use Act (CUA). The CUA was enacted "[t]o ensure seriously ill Californians have the right to obtain and use marijuana for medical purposes" when the use has been recommended by a physician in the treatment for illness. (§ 11362.5, subd. (b)(1)(A).) The purpose of the CUA was to insulate such patients and their primary caregivers from criminal prosecution. (§ 11362.5, subd. (b)(1)(B).) To that end, subdivision (d) of section

4

11362.5, provides that two provisions of the Health and Safety Code—section 11357 [prohibiting possession of marijuana] and section 11358 [prohibiting cultivation of marijuana]—do not apply to patients who have a physician's recommendation to use medical marijuana and the patients' primary care givers. (§ 11362.5, subd. (b)(1)(B).) "[T]he [CUA] is a narrowly drafted statute designed to allow a qualified patient and his or her primary caregiver to possess and cultivate marijuana for the patient's personal use despite the penal laws that outlaw these two acts for all others." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 772-773.)

Subsequently, when the Legislature found "qualified patients and designated primary caregivers" had been prevented from obtaining the protections afforded by the CUA, it enacted the Medical Marijuana Program (MMP) in 2003. (§ 11362.7 et seq.; Stats. 2003, ch. 875, § 1(a)(2).) In order to remedy that situation and to "[e]nhance the access to patients and caregivers to medical marijuana through collective, cooperative cultivation projects" (Stats. 2003, ch. 875, § 1(b)(3)), the MMP required the State Department of Health Services (§ 11362.7, subd. (b)) to "establish and maintain a voluntary program for the issuance of identification cards to qualified patients . . . ." (§ 11362.71, subd. (a)(1).) Subject to the requirements of the MMP (§ 11362.765, subd. (a)), the Legislature provided immunity to "[a]ny individual who provides assistance to a qualified patient or . . . designated primary caregiver" (§ 11362.765, subd. (b)(3)) from "criminal liability under Section . . . 11359 [possession of marijuana for sale] [ or] 11360 [transportation, sale, furnishing, or administering marijuana] . . . ." (§ 11362.765, subd. (a).) In addition, the MMP permits qualified patients and their designated primary caregivers to join together "in order collectively or cooperatively to cultivate marijuana for medical purposes" without being subject to "state criminal sanctions under Section 11357, 11358, *11359*, *11360*, 11366, 11366.5, or 11570" based solely on the collective or cooperative cultivation of "marijuana for medicinal purposes." (§ 11362.775, italics added.) The MMP also provides that a primary caregiver is entitled

to receive reasonable compensation and payment for out-of-pocket expenses incurred in providing his services, including supplying medical marijuana. (§ 11362.765, subdivision (c) ["A primary caregiver who receives compensation for actual expenses, including reasonable compensation incurred for services provided to an eligible qualified patient or person with an identification card to enable that person to use marijuana under this article, or for payment for out-of-pocket expenses incurred in providing those services, or both, shall not, on the sole basis of that fact, be subject to prosecution or punishment under Section 11359 or 11360".].)

Defendant was convicted of one count each of possession of marijuana for sale (§ 11359) and transportation of marijuana (§ 11360, subd. (a)). The parties stipulated defendant held a valid State of California medical marijuana patient identification card on the date of his arrest. Additionally, defense evidence demonstrating defendant was a qualified primary caregiver (§ 11362.5, subd. (e))[2] was unimpeached.

In connection with the transportation of marijuana charge (§ 11360, subd. (a)), the jury was instructed it could not convict defendant unless it found beyond a reasonable doubt his possession of the marijuana was unlawful. (CALCRIM No. 2375.) That instruction further informed the jury that possession authorized by the CUA is lawful and a primary caregiver may transport marijuana for medical purposes to his patients. The jury was not instructed, in connection with that charge or the charge of possessing marijuana for sale (§ 11359), that a primary caregiver may lawfully receive compensation for supplying a patient with medical marijuana, as provided by section 11362.765, subdivision (c). Neither was the jury instructed in the language of section

_____

[2] "For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (§ 11362.5, subd. (e).)

6

11362.775, the provision exempting a primary caregiver from criminal liability for violation of sections 11359 and 11360 based solely on participation in a collective or cooperative to cultivate medical marijuana. Defendant contends the failure to so instruct was prejudicial.

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) "That duty extends to '"instructions on the defendant's theory of the case, including instructions 'as to defenses "'that the defendant is relying on . . . , or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'"'"'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.)" (*People v. Anderson* (2011) 51 Cal.4th 989, 996.) We review de novo whether the trial court erred in failing to instruct on a defense theory. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

Defendant's defense was not inconsistent with the fact that a primary caregiver may receive compensation for furnishing medical marijuana to his patients (§ 11362.765, subd. (c)), and patients and primary caregivers may "collectively or cooperatively . . . cultivate marijuana for medical purposes" without being subject to "state criminal sanctions" under sections 11359 and 11360 solely on that basis. (§ 11362.775.) If there was substantial evidence supporting instruction on these defenses, the court was obligated to so instruct. We find, however, no such substantial evidence.

The prosecution introduced evidence of what its expert considered were pay/owe sheets demonstrating defendant was selling marijuana. Although defendant countered that evidence with Brumfield's testimony to the effect that he recognized the addresses on the alleged pay/owe sheets and defendant never sent medical marijuana to any of the addresses, defendant *did not introduce any evidence to the effect that he*

7

*received compensation from any of his patients for providing them medical marijuana* as permitted by section 11362.765, subdivision (c). In fact, the only evidence he introduced on this issue was to the contrary. Brumfield testified defendant did not charge him for medical marijuana. And the only other defense witness to testify on this subject said defendant never charged her for medical marijuana. Consequently, there was no substantial evidence defendant received compensation for supplying patients with medical marijuana and thus, he was not entitled to an instruction in the terms of section 11362.765, subdivision (c).

Additionally, the jury was instructed that a caregiver could engage in cultivation lawfully for purposes of providing medical marijuana to patients. Accordingly, we find the court did not err in instructing the jury.

III

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

8