Filed 1/7/15  P. v. Campos CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G049543 |
|      v. | (Super. Ct. No. 11CF0448) |
| SALVADOR GONZALEZ CAMPOS, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Salvador Campos appeals from a true finding on an enhancement for discharge of a firearm. Specifically, he contends his lawyer should have asked for a jury instruction on accident and that his failure to do so deprived Campos of his right to effective assistance of counsel.

Campos also contends the trial court should have instructed the jury sua sponte that personal use of a firearm is a lesser included enhancement of intentional discharge of a firearm. Campos acknowledges that the California Supreme Court has held otherwise in *People v. Majors* (1998) 18 Cal.4th 385, 410-411 and that we are required to follow Supreme Court precedent. He raises this issue solely to preserve it. Accordingly, we will not address this aspect of his appeal further other than to express here our rejection of it pursuant to *Majors*.

## FACTS[1]

Adolfo Acosta was the proprietor of a Santa Ana store selling audio equipment for homes and cars. One day, Campos and a male companion were waiting for him when he opened his door at his customary 10:00 a.m. One of the men told Acosta that he wanted to buy a sound system for his truck. Acosta told the men to drive the truck around to the back of the store, where he could help them. Acosta went to the back of the store, instructed the two men how to park the truck, and went to open a shed he used for repairs. While Acosta's back was turned, Campos hit him on the head with a gun. When Acosta turned around, Campos pointed the gun at his face and demanded Acosta's keys. Acosta refused. Campos threatened to kill Acosta, whereupon Acosta pushed Campos' gun hand. A shot was fired, which went into the air. Acosta then gave

---

[1] We recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

Campos the money he had on hand for the store – $800.  Campos ran to the truck, and Acosta ran into the store.  While he was inside the store, Acosta and his employee, Elizabeth Chavez, heard two more shots fired.  He then called 911.

Acosta had motion-activated video surveillance cameras mounted both inside and outside the store.  The cameras captured the robbery, but because of the motion activation, the playback was not a continuous one.

Campos was arrested and charged with attempted murder (Pen. Code, §§ 187, 664)[2], two counts of assault with a firearm (§ 245), second degree robbery (§§ 211, 212.5), grossly negligent discharge of a firearm (§ 246.3), and attempt to dissuade a witness (§ 136.1, subd. (c)(1)).  Because he had a prior felony conviction, he was charged with unlawful possession of a firearm, carrying a loaded firearm in public, and possession of ammunition (now §§ 29800; 25850, subd. (c)(1); 30305).  Use and discharge of firearm enhancements were added to several counts, including the robbery count (§§ 12022.5, subd. (a); 12022.53, subds. (b), (c)).

At trial, Acosta and Chavez testified, as did three Santa Ana police officers.[3]  The video of January 19, 2011, was played in court, and Acosta identified the person in the video as Campos.[4]  The defense put on no witnesses.

After the parties rested, the court dismissed the charge of attempting to dissuade a witness, pursuant to a section 1118.1 motion.  The jury acquitted Campos of attempted murder.  It returned guilty verdicts on all the other counts and true findings on all the remaining firearm enhancements.

---

[2]     All further statutory references are to the Penal Code.

[3]     One officer testified about the prohibited weapons and ammunition found in Campos' car and residence.  Another testifying officer was the detective who investigated the robbery.

[4]     The video showed Acosta coming out of the back of the store, Campos hitting him on the head, Campos pointing the gun at him, and Acosta running back into the store.  There was no audio.

**DISCUSSION**

The basis of Campos' appeal is his counsel's failure to request a pinpoint jury instruction for the discharge of a firearm enhancement to the robbery count. According to Campos, his lawyer should have asked the judge for an instruction on accident as negating the intent element of section 12022.53, subdivision (c).[5] He now suggests CALCRIM No. 3404 provided the template for the instruction that should have been requested.[6] Campos must rely on ineffective assistance of counsel to support this argument because the trial court has no sua sponte duty to instruct on accident. (*People v. Anderson* (2011) 51 Cal.4th 989, 996-998.)

A criminal defendant is constitutionally "entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." (*Strickland v. Washington* (1984) 466 U.S. 668, 685.) It is not enough that the attorney be present; his or her assistance must also be "'adequate.'" (*Id.* at p. 686, quoting *Cuyler v. Sullivan* (1980) 446 U.S. 335, 344.) "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Ibid.* )

"[S]crutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was

---

[5]     Section 12022.53, subdivision (c), provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years." Subdivision (a) includes robbery. (*Id.*, subd. (a)(4).)

[6]     CALCRIM No. 3404 provides in pertinent part: "The defendant is not guilty of _____ *<insert crime(s)>* if (he/she) acted [or failed to act] without the intent required for that crime, but instead acted accidentally. You may not find the defendant guilty of _____ *<insert crime[s]>* unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent."

4

unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (*Strickland v. Washington, supra,* 466 U.S. at p. 689; see *People v. Ledesma* (1987) 43 Cal.3d 171, 216.) On direct appeal, when no explanation for counsel's conduct can be found in the record, "we must reject a claim of ineffective assistance of counsel unless counsel was asked for and failed to provide a satisfactory explanation, or there simply is no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212; see *People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Defense counsel had a tough row to hoe, considering that Campos was caught on video hitting Acosta on the head with a gun and pointing the gun at his face. There was not much point in disputing the robbery or assault charges in light of the video evidence, and counsel did not try to do so. Instead, he tried to minimize the damage by casting doubt on whether Campos actually fired the gun he held. In fact, counsel built most of the defense on discrediting the two witnesses who said the gun was fired. He bore in on Acosta during cross-examination, in part to establish that Acosta could not tell a Glock from a water pistol and in part to establish that events could not have unfolded as Acosta claimed. He also quizzed the investigating police officer about shell casings, bullet holes, gun powder residue, singed hair, and reports of shots fired from the surrounding businesses and apartments – all with an eye to establishing that Campos never fired the gun.

During closing argument, counsel in essence conceded the robbery and assault charges. He did not concede attempted murder, discharging a firearm with gross negligence, and the discharge of a firearm enhancement. Counsel's main argument to the jury – the essence of his trial strategy – was that Campos never fired the gun. He told the jury, "There is really only one actual issue that we're here to determine: whether or not that gun went off. [¶] . . . [¶] The issue of the gun is everything in this case. 100 percent everything."

Counsel argued to the jury that Acosta made up the detail of the gun going off in order to get the police to take his case seriously. He lied about the gun going off in order to get press coverage for the robbery. He induced Chavez to lie about what she saw on the day of the robbery. He made her lie about hearing the shots. No physical evidence established any gunshots.

Campos asserts on appeal that because during closing argument counsel raised the possibility that the gun had been discharged, he should therefore have asked for the jury instruction regarding accident. Counsel did indeed twice raise the possibility that the gun had been fired. The first time, he did so only to dismiss it. "What if you think maybe Mr. Acosta might have been telling the truth? . . . [¶] So let's look at all the circumstances which might say the gun was actually discharged. . . . [¶] Well, Mr. Acosta was scared. . . . Well, sure, he had a gun pointed at him, but it doesn't mean that it was discharged. And that same fear gets turned on its head when you watch the action [on the video] after the gun was actually discharged when he was robbed. The guy is not – the guy is fighting back against a person who he is claiming shot at him deliberately. You're willing to take a bullet so he doesn't have to sacrifice his keys basically is what he was saying. . . . [¶] Is it reasonable to conclude that the gun actually went off? Or is all – or is it also equally safe to assume – to conclude that the gun didn't go off based on that?"

Counsel raised the possibility that Campos fired the gun for the second time in connection with his closing argument on the attempted murder count. At first, he again dismissed the possibility. After all, he said, only Acosta said the gun had been fired. But even if the jury, against all reason, believed the lying Acosta, firing the gun did not prove attempted murder. A robber must come to the scene suitably accoutered, to convince his potential victim that he means business. He has to carry a gun. He may even have to fire the thing to give verisimilitude to the proceedings.[7] But that does not mean he intended to kill his victim, one of the elements of attempted murder.

After this foray in to the hypothetical, counsel quickly returned to his main theme as he addressed negligent discharge of a firearm. If the gun went off, where are the spent bullets? Then came the peroration: "Mr. Campos is not guilty of negligent discharge of a firearm. Mr. Campos did not discharge a firearm in the course of the robbery. Mr. Campos did not discharge a firearm in the course of an attempted murder." Counsel wound up his argument with a resounding "He didn't fire that gun."

Having based nearly the entire defense on a denial that Campos ever fired his gun, counsel could reasonably have believed a jury instruction about a discharge by accident would undercut his theory of the case. He never elicited any evidence the gun went off accidentally. His entire focus during the trial was casting doubt on Acosta's and Chavez's testimony about the gunshots and the lack of physical evidence – no bullets, no shell casings, no reports of shots fired, no singed hair or eyebrows. When he argued to the jury, he emphasized the improbability of Acosta's and Chavez's stories and the lack of corroborating evidence. He never once conceded that Campos' gun went off, intentionally or accidentally. A jury instruction regarding accident would have tacitly admitted a fact antithetical to the entire defense case – that Campos fired the gun. In

---

[7] Contrary to Campos' claim on appeal, his counsel did not characterize the hypothetical gun discharge as accidental. He referred to it in the context of "bringing something with you [to a robbery] that gets attention," rather than as part of a plot to murder someone. "The gun going off unfortunately is incidental to a robbery which did not go the way Mr. Campos wanted it to go."

constructing the defense in this way, counsel appears to have relied on Campos' own version of events; at the sentencing hearing, Campos was still maintaining he had not fired the gun.

The difference in trial strategy makes Campos' reliance on *People v. Jones* (1991) 234 Cal.App.3d 1303, overruled in *People v. Anderson* (2011) 51 Cal.4th 989, misplaced. In *Jones*, "the primary thrust of the defense mounted by the defendant in trial was that the shotgun discharged by accident, as a result of being struck by [the police officer]." (*People v. Jones, supra,* 234 Cal.App.3d at p. 1314.) The primary thrust of Campos' defense was that the gun had never been fired at all. Even suggesting that the discharge was accidental undermined this defense.

Given our deferential review of an attorney's trial strategy, we cannot here find ineffective assistance of counsel. No one asked Campos's counsel why he chose this tack, and there is a satisfactory explanation for his choice. He believed he could create a reasonable doubt that the gun went off and obtain a "not true" finding on the discharge of a gun enhancement. This belief turned out to be wrong, but it was not unreasonable.

Because we conclude that Campos failed to overcome the presumption of sound trial strategy or to demonstrate a performance below an objective standard of reasonableness, we do not need to address the second prong of ineffective assistance of counsel: prejudice to the defendant or a more favorable outcome. (See *People v. Stanley* (2006) 39 Cal.4th 913, 954.)

# DISPOSITION

The sentence enhancement for discharge of a firearm is affirmed.


                                                BEDSWORTH, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

9