Filed 2/29/16  P. v. Ford CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>REGINALD BAMA FORD,<br><br>    Defendant and Appellant. | B259678<br><br>(Los Angeles County<br>Super. Ct. No. SA086297) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Reginald Bama Ford raises contentions of sufficiency of the evidence and sentencing errors following his conviction of robbery and attempted

robbery, with prior serious felony conviction and prior prison term findings.  For the reasons discussed below, the judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

a. *The Hoyt incident*.

On August 24, 2012, Jillian Hoyt lived in Santa Monica.  At about 10:30 a.m. that day, she walked to her car, which was parked in the alley behind her apartment.  Hoyt got into the car, put her purse on the passenger seat, and was settling in with the driver's door open when she noticed there was someone walking behind her car.  Suddenly a man stuck a gun close to her head and said something like, " 'Give me all your money.' "  Hoyt took her wallet from her purse and handed the man her cash.  The man also demanded her iPhone and her rings, and Hoyt complied.  The man then told her to throw her keys on the floor and put her head down.  Hoyt again complied.  After she heard the man leave, Hoyt returned to her apartment and called 9-1-1.

When she was subsequently shown a photo array by the police, Hoyt identified defendant Ford as the man who had robbed her.

b. *The Kendrick incident*.

On October 9, 2012, Megan Kendrick was getting ready to leave for work from her ground-floor condominium in Santa Monica at approximately 8:40 a.m. when she heard her front door knob being jiggled.  Looking through a window, she saw a man wearing a light-colored or white shirt walking away from her front door.  A few minutes later, Kendrick walked out to her detached garage which opened onto an alley.

Kendrick entered the garage, got into her car, and started the engine.  There was construction going on in the alley; Kendrick noticed some construction equipment and a work crew.  As she was about to back out of her garage, someone approached the driver's side of her car.  A man opened her car door and crouched next to her.  The man "made shh-ing noises and told [her] to be quiet."  He had a gun in his right hand.  Kendrick

2

could see his face. But instead of remaining quiet, Kendrick screamed loudly. The man responded by standing up and running away. Kendrick called 9-1-1 and described her assailant as an African-American man wearing a light-colored or white shirt.

Shown a photo array, Kendrick identified Ford as her assailant. Ford's fingerprint was lifted from Kendrick's car door. Kendrick testified her car was new, that she had only had it a few weeks, and that it was always in the garage at night. Kendrick's residence was about one mile from Hoyt's residence.

2. *Defense evidence.*

Defendant elicited testimony from two police officers regarding discrepancies in the descriptions the victims gave of Ford. A friend of Ford's testified that, at the time of these two incidents, Ford had a distinctive beard and haircut.

3. *Trial verdict.*

Ford was convicted of robbery and attempted robbery, with four prior serious felony convictions and two prior prison term findings (Pen. Code, §§ 211, 664 & 211, 667, subds. (b)-(i), 667.5).[1]

## CONTENTIONS

Ford contends: (1) there was insufficient evidence to prove he intended to rob Kendrick; and (2) the trial court erred by denying his *Romero* motion seeking to vacate three of his Three Strikes priors.

## DISCUSSION

1. *There was sufficient evidence Ford intended to rob Kendrick.*

Ford contends that because he did not demand Kendrick's money or any of her personal property, there was insufficient evidence to substantiate the intent element of robbery. There is no merit to this claim.

---

[1] All further statutory references are to the Penal Code.

a. *Legal principles.*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

The reviewing court is to presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206.) Even if the reviewing court believes the circumstantial evidence might be reasonably reconciled with the defendant's innocence, this alone does not warrant interference with the trier of fact's verdict. (*People v. Towler* (1982) 31 Cal.3d 105, 118.) It does not matter that contrary inferences could have been reasonably derived from the evidence. As our Supreme Court said in *People v. Rodriguez, supra,* 20 Cal.4th 1, while reversing an insufficient evidence finding because the reviewing court had rejected contrary, but equally logical, inferences the jury might have drawn: "The [Court of Appeal] majority's

4

reasoning . . . amounted to nothing more than a different weighing of the evidence, one the jury might well have considered and rejected.  The Attorney General's inferences from the evidence were *no more inherently speculative* than the majority's; consequently, the majority erred in substituting its own assessment of the evidence for that of the jury." (*Id*. at p. 12, italics added.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211.)  "The intent required for robbery has been described as the specific intent to deprive the victim of the property permanently.  [Citations.]  Thus, 'the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal . . . .'  [Citation.]"  (*People v. Anderson* (2011) 51 Cal.4th 989, 994.)

         b.  *Discussion*.

Ford contends there was insufficient evidence that he intended to deprive Kendrick of her property because he did not ask for her money or any other personal property, nor did he attempt to take any of her property.  He argues, "There are many different possible motives for [his] conduct such as assault that do not include an intent to permanently deprive."  Ford implies that in the absence of some indication that he was demanding Kendrick's property, his conviction was improperly founded on the mere speculative assumption that he was attempting to commit a robbery.

We do not agree with Ford that the jury could not convict him of robbery absent evidence that he demanded Kendrick's property.  The jury could have concluded from the evidence presented that Ford was the same man Kendrick had seen minutes earlier jiggling her front door knob in an apparent attempt to gain entry to her apartment.  As the Attorney General points out, "When appellant then appeared at Kendrick's auto and confronted her with a gun and instructed her to be quiet, a reasonable jury could infer that appellant was moving from burglary to robbery in order to perpetrate his larcenous intent."

*People v. Gilbert* (1963) 214 Cal.App.2d 566, involved a similar situation. Gilbert had been loitering in a food market at closing time when Swift entered. Swift "drew a pistol and approached the counter. [Gilbert] drew his gun and ordered employees and customers to a room at the rear. As Swift reached the counter, he began to beat the owner, one Eng, over the head with his gun, saying 'You're the man I wanted, . . . get in the back.' " (*Id*. at p. 567.) At this point, Eng resisted and the two gunmen fled. Appealing his conviction for attempted robbery and assault with a deadly weapon, Gilbert argued there was insufficient evidence he intended to take any personal property from Eng. The Court of Appeal disagreed: "Unquestionably, such intent is an essential [element] of the crime of attempted robbery. But intent is manifested by the circumstances connected with the offense. [Citation.] The presence of two armed strangers in a market shortly after closing time, their substantially simultaneous display of weapons, one pointing at the proprietor near the cash drawer and the other herding the remaining occupants to a rear room, is an unfortunately familiar situation readily suggesting intent to rob. The lack of some such phrase as 'this is a stickup,' or 'hand over your money,' does not bar the reasonable inference that the forceful taking of property is intended [citations]. It is argued that the only fair inference is that an assault or battery upon Eng was intended. But there is direct evidence that Eng did not know defendant, and a strong implication that he had never seen Swift. The more reasonable inference, and that drawn by the jury, is that robbery was intended." (*Id*. at pp. 567-568.)

In the case at bar, too, it was a fair inference that Ford intended to commit a robbery. Someone wearing similar clothing had moments before jiggled Kendrick's front door knob; subsequently, Ford knelt next to Kendrick's car with a gun in his hand and told her to keep quiet. It was apparent from her testimony that Kendrick was not acquainted with Ford. As our Supreme Court taught in *People v. Rodriguez*, *supra*, 20 Cal.4th 1, Ford's argument that he might have been planning only to assault Kendrick is simply an invitation to reweigh the evidence in a case where the jury's attempted robbery finding was "no more inherently speculative" (*id*. at p. 12) than Ford's assault suggestion.

There was sufficient evidence to sustain Ford's conviction of attempted robbery of Kendrick.

2. *Trial court properly denied Ford's* Romero *request.*

Ford contends the trial court abused its discretion by refusing to dismiss, under the authority of *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), three of the four prior serious felony convictions used to enhance his sentence under the Three Strikes law. We do not agree.

a. *Legal principles.*

The factors to be considered in ruling on a *Romero* motion were set forth in *People v. Williams* (1998) 17 Cal.4th 148, 161: "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not

abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.) Hence, " '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' " (*Id.* at p. 378.)

>    b. *Discussion*.

Ford asserts that at least three of his prior serious felony convictions should have been vacated because "[h]is prior strikes arose from one 1993 case and are remote (21 years old)," and "[t]he victims in the current case were not injured."

Ford's probation report demonstrates that he has a substantial criminal history. As a juvenile in 1991, Ford was charged with robbery and battery, although only the battery charge (§ 242) was sustained. As an adult, Ford was convicted in 1993 of forcible rape, sexual penetration by a foreign object, robbery and attempted robbery (§§ 261, 289, 211, 664 & 211). As to each of these four convictions, he was found to have used a firearm. Ford acknowledges these crimes involved "multiple victims."[2] As a result of these 1993 convictions, he was sentenced to prison for a term of 24 years 4 months. In 2006, after being charged with robbery and evading a peace officer (§ 211; Veh. Code, § 2800), Ford was found to be in violation of parole and was returned to prison. The People's opposition to the request for *Romero* relief asserted (and Ford does not dispute), that he was paroled in September 2005, violated parole in March 2006, paroled again in December 2006, again violated parole in March 2009, and was ultimately discharged in September 2009. The current crimes were committed just three years later.

Given the seriousness of Ford's overall record and his recidivism, we cannot say the trial court abused its discretion by denying the *Romero* motion. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 338 ["the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike of those

---

[2]    After examining the complaint in the 1993 matter, the prosecutor represented to the trial court that the robbery and the attempted robbery had been committed against two different victims on two different dates.

defendants with a long and continuous criminal career."]; see also *People v. Carmony*, *supra*, 33 Cal.4th at p. 378 [" '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' "].)

The trial court did not abuse its discretion by denying Ford's *Romero* request.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:



ALDRICH, J.



JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.